IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 20, 2005

## STATE OF TENNESSEE v. RANDALL BISHOP

**Direct Appeal from the Circuit Court for Warren County**
**No. F-9276     Larry B. Stanley, Jr., Judge**

---

**No. M2004-02641-CCA-R3-CD - Filed November 8, 2005**

---

The defendant, Randall K. Bishop, was indicted for manufacturing methamphetamine, a Class C felony.  A jury convicted the defendant of facilitation of the manufacture of methamphetamine, a Class D felony.  The defendant was sentenced to three years as a Range I, standard offender.  The defendant now appeals, challenging the sufficiency of the evidence to support the conviction.  After careful review, we find the evidence sufficient and affirm the conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Billy K. Tollison, III, McMinnville, Tennessee, for the appellant, Randall Bishop.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Clement Dale Potter, District Attorney General; and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Our standard when reviewing a sufficiency challenge is "whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002); see also Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319 (1979).  A verdict of guilt removes the presumption of innocence and imposes a presumption of guilt; thus, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).  Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this court does not re-weigh or re-evaluate the evidence.  State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  Nor

may this court substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Carruthers, 35 S.W.3d at 557-58.

A person is "criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (1997). The statute applies to a person who has facilitated the commission of a felony by another by furnishing substantial assistance but without the intent to promote, assist in, or benefit from the felony's commission. Tenn. Code Ann. § 39-11-403 (Sentencing Comm'n Comments). Stated another way, the State must prove the commission of a specified felony, in this case the manufacture of methamphetamine, and must prove that the defendant knowingly contributed substantial assistance to the endeavor.

The testimony at trial was provided by only two witnesses: Stuart Colwell, a deputy sheriff for Warren County, and Adam Gray, a former forensic chemist with the Tennessee Bureau of Investigation. Deputy Colwell stated that on November 6, 2002, accompanied by Deputy James Ramsey, he went to a residence to investigate a report of methamphetamine manufacturing. The residence had not been under surveillance, and the officers did not know who lived there or whom they would find at the house. Amy Brown responded to the officer's knock on the door after three to five minutes had elapsed. Ms. Brown stated it was her residence and agreed to Deputy Colwell's request to search the house. She asked for time to allow the defendant to get dressed. The officers waited ten minutes and were then admitted into the residence. The defendant was seated on the living room couch. Upon entering, Deputy Colwell detected a chemical odor associated with the manufacture of methamphetamine. The two officers began to search the house as Ms. Brown accompanied them. After the discovery of items commonly associated with producing methamphetamine, Deputy Colwell called for additional officers.

The items seized included a Pyrex dish, a measuring cup, and a plastic funnel. The funnel contained residue that Deputy Colwell suspected was either methamphetamine or ephedrine. A twenty-ounce soft drink bottle containing a small amount of liquid with a strong acidic odor was found. The top of the bottle was stained red. Deputy Colwell explained that acid was used to "gas out" methamphetamine and that red staining can occur from iodine boiling out of the mixture. Wet coffee filters were found in the kitchen garbage can. One contained a red substance that Deputy Colwell suspected was phosphorous. An empty bottle of hydrogen peroxide was found. According to Deputy Colwell, it is used with iodine to make crystal iodine. An empty cigarette pack contained two bags, one containing red powder and the other containing a white rock-type powder. Deputy Colwell suspected the red powder to be phosphorous and explained that it is commonly derived from the striker plates of matchbooks. He stated that red phosphorous can be reused in producing methamphetamine. A Whistler coffee pot, with a wooden stopper and black electrical tape around the top, was found in a closet. Deputy Colwell said this brand of coffee pot is heat resistant and is often used in the cooking of methamphetamine. The pot had a red burn which he said was consistent with such use. A gallon milk jug containing iodine was found in the bathroom under some clothing articles. Crystals were forming inside which Deputy Colwell attributed to having been mixed with

hydrogen peroxide. Two bottles of HEET antifreeze were found in a closet. A glass flask with two necks was found. Deputy Colwell did not know how this item was used. A container was found under the couch where the defendant was seated. It contained a glass tube with burn marks and residue which indicated it was used to smoke methamphetamine. Also in the container was a hollowed-out ink pen which could be used to snort drugs. Both Ms. Brown and the defendant denied ownership of the two items in the container. A glass mirror and two plastic baggies with a residue were found. Deputy Colwell said the mirror could be used as a cutting board to cut the drug.

The defendant was later interviewed by Deputy Colwell at the Warren County Jail. The defendant admitted that he was an occasional methamphetamine user and had been for approximately two years. He is a resident of Bon Cave in Van Buren County. The defendant stated that he had been at Ms. Brown's residence one hour before the police arrived and that he had visited Ms. Brown on numerous occasions. He denied any participation in manufacturing the methamphetamine or providing any chemicals for that purpose. The defendant admitted that he had covered the jug containing iodine with clothing articles. No contraband was found on the defendant's person.

Deputy Colwell estimated that methamphetamine had been manufactured in the residence within four to five hours prior to his arrival. This estimate was premised on the presence of the still wet coffee filters and that the iodine was still crystalizing. On cross-examination, Deputy Colwell admitted that neither ephedrine nor pseudoephedrine, ingredients commonly used in making methamphetamine, were found in the residence. No matchbooks or striker plates were found during the search.

Adam Gray, a former special agent and forensic chemist with the TBI, testified that he had received three items for testing that were associated with this case. The items were coffee filters, a rock-like substance, and red powder. All three items tested positive for the presence of methamphetamine. No test for purity or for any other substance was performed.

To withstand the defendant's challenge to the sufficiency of the evidence, the facts must establish that a rational jury could have found the essential elements of facilitation of methamphetamine by the defendant beyond a reasonable doubt. Reid, 91 S.W.3d at 276. The defendant, although a guest in the residence, could not be said to be a casual guest as he stated that he had visited there on numerous occasions. The odor associated with methamphetamine manufacture permeated the air in the house to such a degree that Deputy Colwell immediately detected it upon his entry. That peculiar aroma, the wet coffee filters, and active crystallization of the iodine all indicated recent manufacturing activity which Deputy Colwell estimated to have occurred in the last four to five hours. The defendant claimed to have been present at the residence only an hour before the officers' arrival. However, the jury is not bound by such a claim. "The jury was entitled to accept that part of the defendant's proof they felt was consistent with truth and reject that portion they believed originated in falsity." State v. Gilbert, 612 S.W.2d 188, 190 (Tenn. Crim. App. 1980). The defendant's attempt to hide the iodine jug provided evidence of his knowledge of the manufacturing as well as his intent to prevent discovery of the process. Combining the long

delay in the admittance of the officers to the residence, the evidence of recent manufacture, the defendant's admissions of covering the iodine jug and being a frequent visitor in the residence, a rational jury could logically infer that the defendant was contributing substantially to and facilitating the manufacture of methamphetamine.

We are aware that mere presence during the commission of a criminal act is insufficient to support conviction. State v. Jones, 15 S.W.3d 880, 890 (Tenn. Crim. App. 1999). However, the record herein indicates that the defendant was more than a passive presence and, in fact, assumed an active role. The evidence, while not overwhelming, adequately supports the defendant's conviction for facilitation of manufacture of methamphetamine.

Accordingly, the conviction is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE